

**SIGNED this 24th day of July, 2014**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

In re:

RIVER CITY RESORT, INC.,                          No. 14-10745
                                                  Chapter 11
              Debtor;


RIVER CITY RESORT, INC., and
B. ALLEN CASEY, JR.,
              Plaintiffs,
v.                                                Adversary Proceeding
                                                  No. 14-01027
PAUL FRANKENBERG, III, and
S. JACKSON WINGFIELD, III,


              Defendants.


RIVER CITY RESORT, INC., and
B. ALLEN CASEY, JR.,

              Plaintiffs,


v.

                                                  Adversary Proceeding
                                                  No. 14-01028

PAUL FRANKENBERG, III, and
S. JACKSON WINGFIELD, III,

Defendants.

*Appearances for the Debtor River City Resort, Inc.*

>David J. Fulton, Esq.
>Scarborough, Fulton & Glass
>701 Market Street
>Suite 1000
>Chattanooga, TN 37402

*Appearances for Paul Frankenberg, III*

>Harry R. Cash, Esq.
>Grant, Konvalinka and Harrison
>Suite 900 Republic Centre
>633 Chestnut Street
>Chattanooga, TN 37450

>Steven F. Dobson
>Burnette, Dobson & Pinchak
>711 Cherry Street
>Chattanooga, Tennessee 37402

*Appearances for S. Jackson Wingfield, III*

>Barry L. Abbott, Esq.
>Cavett & Abbott
>Suite 428
>801 Broad Street
>Chattanooga, TN 37402

>Scott M. Shaw, Esq.
>Evans Harrison Hackett, PLLC
>835 Georgia Avenue
>Suite 800
>Chattanooga, TN 37402

### MEMORANDUM

On December 30, 2005, Paul J. Frankenberg, III ("Frankenberg") commenced an action

in the Chancery Court of Hamilton County, Docket No. 05-1271, naming debtor River City

Resort, Inc. ("Debtor" or "RCR") and B. Allen Casey ("Casey") as defendants ("Contract

Case"). [Adv. Proc. No. 14-1027, Doc. No. 1-1]. In the Contract Case, Frankenberg sought

2

recovery of compensation for services rendered to RCR as an officer and damages against RCR and Casey for breach of a settlement agreement, which required the settlement obligations to be secured by security interests in some or all of RCR's property. He also requested an attachment of the property of RCR to secure any judgment. Before the Contract Case had been heard, on June 13, 2012, Frankenberg filed a second case in the Chancery Court of Hamilton County, Tennessee, against RCR and Casey, Docket No. 12-0032, and added S. Jackson Wingfield ("Wingfield") and River House Trust, LLC ("River House") as defendants ("Fraudulent Transfer Case"). [Adv. Proc. No. 14-1028, Doc. No. 1-1]. In the Fraudulent Transfer Case, Frankenberg alleged that, in 2008, RCR and Casey had transferred three lots of real property owned by RCR or a subsidiary for less than reasonably equivalent value while RCR was insolvent with the intent to defraud RCR's creditors. Contract Case Complaint, ¶¶ 19-22. Based on his status as a creditor of RCR, Frankenberg  claimed that the transfer was fraudulent and should be avoided.  If the transfer were avoided, he also contended that his claims should be protected by a lien on the real property in order to fulfill the promises made to him by Casey and RCR. These two cases were to be tried together in Chancery Court in July of 2014.

On February 24, 2014, RCR filed a Chapter 11 voluntary petition. [Bankr. Case No. 14-10745, Doc. No.1]. Two days later, Casey filed a voluntary Chapter 7 petition. *See* [Bankr. Case No. 14-10778, Doc. No. 1]. Richard P. Jahn was employed as trustee, but due to a conflict, was later replaced by Douglas R. Johnson on May 29, 2014. [Bankr. Case No. 14-10778, Doc. No. 70]. On March 19, 2014, RCR and Casey filed an adversary proceeding against Frankenberg and Wingfield and a Notice of Removal removing the Contract Case to this court. [Adv. Proc. No. 14-1027, Doc. No. 1] ("Contract Proceeding"). That same day RCR and Casey filed a second adversary proceeding against Frankenberg and Wingfield removing the Fraudulent Transfer Case

to the bankruptcy court. [Adv. Proc. No. 14-1028, Doc. No. 1] ("Fraudulent Transfer Proceeding").

On April 14, 2014, Wingfield filed a Motion for Remand  in each adversary proceeding. Although Wingfield was named in only the Fraudulent Transfer Case in Chancery Court, he received a summons and a copy of the Contract Proceeding Complaint and has responded out of an abundance of caution. *See* [Doc. Nos. 8, 10, 12]. The court heard oral argument on May 22, 2014 on the motions ("Remand Hearing"). As to the Contract Proceeding, the Debtor challenges Wingfield's standing to file a motion for remand. As discussed below, the court finds that the proceedings are closely related and finds the motions should be addressed together. The success of the Fraudulent Transfer Proceeding is dependent upon a finding in the Contract Proceeding that Frankenberg was a creditor at the time of the transfers. To the extent that the court finds that the Fraudulent Transfer Proceeding must be remanded, it will exercise its discretion and remand the Contract Proceeding in the interests of judicial economy and in order to prevent inconsistent verdicts. Therefore, the court does not find it necessary to address the issue of Wingfield's standing to request remand in the Contract Proceeding.

These remand motions present the court with the issue of whether this court should hear these proceedings even if it cannot enter a final order. Both proceedings are clearly related to RCR's prepetition business and will determine the amount of a large claim in the bankruptcy estate. RCR argues that the resolution of these proceedings may have a significant impact on what assets will be available to all creditors, and this court should therefore be the court to hear the proceedings. On the other hand, the proceedings also involve  long-standing claims governed by state law which could be heard promptly in the state court. Wingfield argues that these

proceedings should be handled by a court that can both hear and determine all of the parties'
claims and defenses.

The bankruptcy court's jurisdiction to hear and determine "*Stern* claims," i.e., matters
listed as core in 28 U.S.C. § 157(b)(2), but which require adjudication by an Article III judge,
has just been reviewed by the United States Supreme Court. *See Executive Benefits Ins. Agency
v. Arkison (In re Bellingham)*, 134 S.Ct. 2165 (2014). As the Supreme Court recently held, in a
"*Stern* claim," which includes a fraudulent transfer claim, this court may only propose findings
of fact and conclusions of law, and the resolution of the proceedings will be subject to *de novo*
review by the district court. Both parties are seeking the most efficient and prompt resolution of
their disputes, although they disagree about which court is best-suited to offer that resolution.
This court concludes the claims in both proceedings should be remanded with limited
reservations.

For the reasons stated in the following findings of facts and conclusions of law made
pursuant to Fed. R. Bankr. P. 7052, the court will GRANT in part, and DENY in part the motion
for remand in the Contract Proceeding. The court will GRANT the motion for remand in the
Fraudulent Transfer Proceeding.

## I.      Facts

### A.      The Contract Case Allegations

#### 1.      Wage Claim

As described above, Frankenberg alleged in the Contract Case complaint that he was an
employee of the RCR and was owed sums for past labor and services performed on behalf of
RCR. [Adv. Proc. No. 14-1027, Doc. No. 1-1, ("Contract Case Complaint"), ¶ 2]. He claimed
that RCR owes him $268,181.81 for bonus and severance payments. *Id.* at ¶ 3. Frankenberg filed

a Notice of Lien against all property of the Debtor in the Register's Office of Hamilton County, Tennessee. *Id.* at ¶ 5. He alleged that the RCR breached the employment contract it made with him and that he was thus entitled to a lien pursuant to Tenn. Code Ann. § 66-13-101. *Id.* at ¶ 6. At the Remand Hearing, Frankenberg's counsel stipulated that his client's lien claim for wages had been dismissed pursuant to a dispositive motion heard by the Chancery Court. Frankenberg appealed the dismissal to the Tennessee Court of Appeals, and the appellate court affirmed the dismissal of the lien claim on the basis that Frankenberg was an officer and not an "employee" under the statute. *See Frankenberg v. River City Resort, Inc.*, No. E2012-01106-COA-R3-CV, 2013 WL 3877617 (Tenn. Ct. App. Apr. 11, 2013). The Tennessee Supreme Court denied permission to appeal on October 28, 2013. *See id.* Frankenberg's counsel stated at the Remand Hearing that Frankenberg was no longer claiming a lien in all of RCR's property based on Tenn. Code Ann. § 66-13-101.

### 2.    Breach of Settlement Claims

In addition to the wage lien claim, Frankenberg alleged that in the three months prior to the filing of the Contract Case Complaint, there were other claims that the parties settled for $437,988.92 as outlined in a settlement agreement ("Settlement Agreement") that was filed with the Contract Case Complaint. Contract Case Complaint, ¶ 7; [Adv. Proc. No. 14-1027, Doc. No. 1-1, Ex. A, pp. 8-13, Settlement Agreement]. The Settlement Agreement required RCR to execute a note dated November 20, 2005 in the principal amount of $187,988.92 that bore interest at ten percent and was due and payable in full on December 28, 2005 ("Note 1"). Contract Case Complaint, ¶ 8; [Adv. Proc. No. 14-1027, Doc. No. 1-1, Ex. A, p. 19]. It also required RCR to execute a second note on November 20, 2005 in the amount of $250,000 bearing interest of 10% a year payable monthly ("Note 2"). [Adv. Proc. No. 14-1027, Doc. No.

1-1, Ex. A, pp. 22-23]. The entire amount under the Note 2 was due on March 28, 2006. Casey

personally guaranteed Note 1 and Note 2. Settlement Agreement at ¶ 9. Frankenberg contended

that the Settlement Agreement provided that both Notes 1 and 2 would be secured by a lien on

property of RCR and that the parties would execute such documents necessary to effect such a

transaction. He further asserted that Casey refused to execute a deed of trust required by the

Settlement Agreement. Contract Case Complaint, ¶ 10.

An "Addendum to Settlement Agreement," also filed with the Contract Case Complaint,

provided that Notes 1 and 2 were to be secured by a security interest and lien upon real estate

known as 424 Manufacturers Road Lots 1 and 4. *Id.* at p. 12. The Settlement Agreement stated

that the lien upon Lot 4 was contingent upon a determination that Lot 4 was unencumbered.

[Adv. Proc. No. 14-1027, Doc. No. 1-1, pp. 12-13]. In addition, the Notes were to be secured by

a second position security interest in real estate known as 430 Manufacturer's Road Lot 5. Lots 4

and 5 are property of the RCR bankruptcy estate.

### 3.      Requested Relief

The Contract Case Complaint demanded a judgment against RCR in the amount of

$268,181.81 for salary, bonus, and severance pay, plus 10% interest, attorneys' fees and costs. It

also sought to enforce Frankenberg's right under the Settlement Agreement to impose liens on all

the property of the RCR and requested that the property be sold to satisfy Frankenberg's liens

and judgments. It also sought an order requiring RCR to execute a deed of trust to perfect a lien

upon its real estate. Frankenberg finally demanded a judgment against RCR and Casey in the

amounts of $187,988.92 and $250,000 plus interest due from the RCR's failure to pay Notes 1

and 2.

As noted *supra*, the RCR filed a Chapter 11 voluntary petition on February 24, 2014. [Bankr. Case No. 14-10745, Doc. No. 1]. Frankenberg, if his settlement and note claims are successful, will be one of the largest creditors in the RCR bankruptcy case.

### B.      RCR's and Casey's Counterclaims

At the time of the removal of the Contract Case, RCR and Casey had counterclaims pending against Frankenberg. [Doc. No. 1-1, Ex. A, pp. 45-51]. These claims are for libel of title (quiet title for filing the wage lien), violation of Tenn. Code Ann. § 66-21-106 (refusal to release lien) and a contingent claim for a membership contribution to purchase the RCR member interest which Frankenberg contends he was promised. No one argued at the Remand Hearing that resolution of Frankenberg's bankruptcy claim would necessarily resolve RCR's counterclaims, and the court finds that they are claims that could have been brought separately in a separate state court proceeding.

### C.      The Fraudulent Transfer Case Allegations

Approximately seven years after he had filed the Contract Case, Frankenberg filed the Fraudulent Transfer Case against RCR, River House, Casey and Wingfield. Frankenberg alleged that RCR and River House transferred three tracts of real property adjacent to Lots 1, 3, 4 and 5 that should have been available to satisfy his claims. [Adv. Proc. No. 14-1028, Doc. No. 1-1].

The three transferred lots, designated by RCR as Lots 2, 6 and 7, were part of a tract composed of seven lots on the Tennessee River. RCR and Casey had been trying to develop the tract into a restaurant and hotel property since 1998 when the first parcels had been acquired. It was this project that Frankenberg had been hired to manage, and it was his employment agreement with RCR that was the genesis of the Frankenberg – RCR/Casey dispute. The

Fraudulent Transfer Case was brought to prevent what Frankenberg viewed as Casey's attempt to strip RCR of assets and thereby avoid Casey's obligations to him.

The Fraudulent Transfer Complaint alleges that Wingfield paid $2.9 million for the three lots which he purchased from RCR and River House in 2008. Fraudulent Transfer Complaint, ¶ 18. Although it is unclear from the limited state court record which this court has, all of the parties seem to agree that the three transferred lots were originally part of a larger Lot 2 which was subdivided into three parcels, designated as Lots 2, 6 and 7. At some point prior to the filing of the Fraudulent Transfer Case, Lot 2, which has river frontage, was transferred by RCR to River House. Frankenberg alleges that River House is owned or controlled by Casey or RCR. RCR does not dispute this allegation based on  a motion in the Fraudulent Transfer Proceeding filed by RCR to amend its answer and assert a cross-claim of its own against Wingfield to recover the three lots. [Adv. Proc. No. 14-1028, Doc. No. 19-1, ¶¶ 6-7]. This court has granted that motion and RCR will be permitted to assert the cross-claim. RCR, as the debtor in possession, now seeks to make the same contentions about insufficiency of consideration and RCR's insolvency that Frankenberg had made in the Fraudulent Transfer Case. The RCR's proposed cross-claim states that the Lots, 2, 6 and 7 were conveyed to Wingfield on the eve of a foreclosure for a price "far below fair valuation of the Property" and for an amount less than the parties had previously agreed. *Id.* at ¶¶ 12, 13. It further alleges that the sale occurred while the debts of RCR and River House exceeded their assets. *Id.* at ¶ 14. Should RCR be successful, the transfer of the three lots would be avoided and the adjacent tracts would be added to Lots 1, 3, 4 and 5 which are currently listed for sale in the RCR bankruptcy estate.

Wingfield has defended his interest in the transferred lots on numerous bases. He introduced pleadings in the form of the answer from the Fraudulent Transfer Case in which

Casey and RCR had previously stated that $2.9 million was "reasonably equivalent value" for the three lots.  *See* [Adv. Proc. No. 14-1028, Doc. No. 1-1, Ex. A, Answer by River City Resort, River House Trust, LLC, and B. Allen Casey, p. 27, ¶ 22.d]. Wingfield has no other claim pending against RCR or Casey, and, as of now, has no basis on which to file a non-contingent claim. His appearances in the RCR case have been solely to object to this court's retaining jurisdiction over these proceedings.

Other creditors in this case and Wingfield have agreed that this court has jurisdiction over Adversary Proceeding No. 14-1026, a proceeding involving RCR that includes an allegation  that mentions Wingfield as the recipient of a fraudulent transfer. [Adv. Proc. No. 14-1026, Doc. Nos. 1-1, Ex. A, p. 75, Amended Complaint, Count VI; Doc. Nos. 21, 25]. In that proceeding, Mr. Wingfield has also filed a Motion to Remand to Hamilton County Chancery Court, which has now been withdrawn. [Adv. Proc. No. 14-1026, Doc. No. 26]. But the withdrawal was based on the fact that "the litigation in the Adversary Proceeding between the Plaintiffs therein and Mr. Wingfield ha[s] been resolved, and no claims remain pending in this Adversary Proceeding either for or against Mr. Wingfield." *Id.* The court has entered an order dismissing Wingfield from that proceeding. Thus, it appears that Wingfield will no longer be involved in Adversary Proceeding No. 14-1026. He appears to have no other interest in the bankruptcy estate at this time.

## II.    Analysis

### A.    Jurisdiction

Congress has delegated bankruptcy subject matter jurisdiction to the district courts. 28 U.S.C. § 1334 provides in part:

(a)  Except as provided in subsection (b) of this section, the district courts shall
     have original and exclusive jurisdiction of all cases under title 11.

    (b) Except as provided in subsection (e)(2), and notwithstanding any Act of
Congress that confers exclusive jurisdiction on a court or courts other than the
district courts, the district courts shall have original but not exclusive
jurisdiction of all civil proceedings arising under title 11, or arising in or
related to cases under title 11.

11 U.S.C. § 1334(a)–(b).

    District courts may refer their jurisdiction to the bankruptcy courts under 28 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.")  28 U.S.C. § 157(a). That has been done in this district pursuant to a standing order entered on July 11, 1984 by the district judges for the United States District Court for the Eastern District of Tennessee. To that end, 28 U.S.C. § 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1). Thus, once jurisdiction in district court is established preliminarily, the bankruptcy court must then decide whether it has subject matter jurisdiction over those claims. This inquiry was rooted in the "core proceeding" language of § 157: the bankruptcy court had to determine whether the matters before it were core or non-core. *Sanders Confectionary Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 482 (6th Cir. 1992); 131 S.Ct. 2594 (2011). If a matter was a core proceeding, the statute authorized the bankruptcy court to enter a final order in the proceeding.

    28 U.S.C. § 157(b)(2) provides the non-exclusive list of "core" proceedings. 28 U.S.C. § 157(b)(2). The relevant proceedings listed are:

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate and estimation of claims or interests for the purpose of confirming a plan under chapter 11, 12, or 13 of title 11 . . .

(H) proceedings to determine, avoid, or recover fraudulent conveyances; . . .

(K) determinations of the validity, extent, or priority of liens; . . .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; . . . .

28 U.S.C. § 157(b)(2).

In this case, the Contract Proceeding and the Fraudulent Transfer Proceedings contain claims for: 1) damages for breach of settlement agreement and default in the payment of promissory notes; 2) recovery of a fraudulent conveyance; and 3) imposition of equitable liens for deeds of trust which RCR or Casey allegedly promised but failed to execute. In the Contract Proceeding, RCR has counterclaimed for libel of title, damages for a violation of state property statute requiring releases of liens, and a contingent claim for a limited liability membership contribution. In addition, RCR has been allowed to add a cross-claim in the Contract Proceeding to recover property it conveyed to Wingfield as a fraudulent transfer. The claims in these proceedings involve the allowance of Frankenberg's claim, the determination of RCR's counterclaims against him and the avoidance of fraudulent transfers to a third party. They also seek to impose liens on property of RCR which will require this court to determine the validity, extent and priority of those liens vis-a-vis the claims of the other creditors in the RCR bankruptcy case.

The language of the statute would seem to end the jurisdictional analysis. These claims are defined as core proceedings; however, the United States Supreme Court has held that there is another level of jurisdictional scrutiny to be applied. *Stern v. Marshall,* 131 S.Ct. at 2608 (noting that "[a]lthough we conclude that § 157(b)(2)(C) permits the Bankruptcy Court to enter final

judgment on [the debtor's] counterclaim, Article III of the Constitution does not"). The court

must also determine whether it has constitutional authority to hear *and* determine these

proceedings. Based on the following analysis, including a review of the Supreme Court's

decision in *Executive Benefits Ins. Co.*, the court finds that it does not have authority to

"determine" the counterclaims in the Contract Proceeding or the claims in the Fraudulent

Transfer Proceeding, but it may still "hear" them as non-core matters related to the bankruptcy

case. *Executive Benefits Ins. Agency*, 134 S.Ct. at 2172.

### 1.    Contract Case Proceeding

With respect to Mr. Frankenberg's claims of breach of the Settlement Agreement and

default under the promissory notes, Mr. Frankenberg indicated his intent to file a claim in the

main bankruptcy case. [Adv. Proc. No. 14-1027, Doc. No. 14, p. 2, n.1]. Following the Remand

Hearing, he filed a claim for $1,891,094.22 on June 26, 2014. [Bankr. Case No. 14-10745, Claim

No. 15]. Any objection to his claim will be a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(B). At this time there is no objection filed to his claim.  Only counterclaims, which

would give rise to a claim for an offset or actual recovery if they are successful, are pending in

the Contract Proceeding.

The court's constitutional jurisdiction over the counterclaims filed by the Debtor

depends on the nature of those counterclaims. In *In re Hopkins*, this court summarized the ruling

of the U.S. Supreme Court in *Stern v. Marshall*, ___ U.S. ____, 131 S.Ct. 2594 (2011). *Still v.

Hopkins (In re Hopkins)*, 494 B.R. 306 (Bankr. E.D. Tenn. 2013). The court explained the ruling

in *Stern*:

> In *Stern* the Supreme Court addressed whether the bankruptcy court had
> jurisdiction over a state law counterclaim filed by the estate against a third party
> who had filed a claim against the estate. The debtor, who was a billionaire's third
> wife known by the name Anna Nicole Smith, filed suit in Texas state probate

court against her stepson prior to the death of her husband claiming that the stepson fraudulently induced her husband to sign a living trust that excluded her. Following the death of her husband, the debtor, who passed away during the course of the litigation, filed a petition for bankruptcy in bankruptcy court in California. The stepson then filed a complaint in the bankruptcy proceeding claiming that the debtor had defamed him by inducing her attorneys to inform the media that he engaged in fraud to obtain his deceased father's estate. The stepson also filed a proof of claim in the bankruptcy case for his defamation action. The debtor filed a counterclaim against the stepson claiming tortious interference with the gift she expected from her late husband.

>       The Supreme Court then addressed whether the bankruptcy court had jurisdiction over the debtor's state law counterclaim of tortious interference. The Court determined that although "§ 157(b)(2)(C) permits the Bankruptcy Court to enter final judgment on [the debtor's] counterclaim, Article III of the Constitution does not."

494 B.R. at 311 (quoting *Stern*, 131 S.Ct. at 2601, 2608).

In *Stern* the U.S. Supreme Court explained that counterclaims that are not resolved through the claims allowance process are not core proceedings. In discussing a counterclaim that is not addressed through a bankruptcy court's resolution of a party's claim, the Supreme Court noted:

>       In ruling on Vickie's counterclaim, the Bankruptcy Court was required to and did make several factual and legal determinations that were "disposed of in passing on objections" to Pierce's proof of claim for defamation, which the court had denied almost a year earlier. There was some overlap between Vickie's counterclaim and Pierce's defamation claim that led the courts below to conclude that the counterclaim was compulsory, or at least in an "attenuated" sense related to Pierce's claim. But there was never any reason to believe that the process of adjudicating Pierce's proof of claim would necessarily resolve Vickie's counterclaim. . . . There thus was never reason to believe that the process of ruling on Pierce's proof of claim would necessarily result in the resolution of Vickie's counterclaim.

131 S.Ct. at 2617 (citing *Katchen v. Landy*, 382 U.S. 323, 332 n.9, 86 S.Ct. 467 (1966)) (other citations omitted). Like the counterclaim of tortious interference in *Stern*, the Debtor's counterclaims for libel of title and member contribution claims in the Contract Proceeding would not necessarily be resolved through the resolution of Frankenberg's contract and lien claims.

Thus, the RCR's counterclaims in the Contract Proceeding are similar to the counterclaims in

*Stern*, and this court does not have the authority to enter a final order on those claims. They are

thus "*Stern* claims" as discussed in *Executive Benefits Ins. Agency*.

### 2.    Fraudulent Transfer Proceeding

With respect to the Fraudulent Transfer Proceeding, 28 U.S.C. § 157(b)(2)(H) provides

for core jurisdiction over fraudulent conveyance actions; however, dicta in *Stern* suggests that a

state law claim of fraudulent transfer is not one in which the bankruptcy court can enter a final

order.  It is a private right which requires an Article III judge to adjudicate.  In a discussion of

public versus private rights, the Supreme Court referenced a fraudulent transfer action:

> In *Granfinanciera* we rejected a bankruptcy trustee's argument that a fraudulent
> conveyance action filed on behalf of a bankruptcy estate against a noncreditor in a
> bankruptcy proceeding fell within the "public rights" exception. We explained
> that, "[i]f a statutory right is not closely intertwined with a federal regulatory
> program Congress has power to enact, and if that right neither belongs to nor
> exists against the Federal Government, then it must be adjudicated by an Article
> III court." We reasoned that fraudulent conveyance suits were "quintessentially
> suits at common law that more nearly resemble state law contract claims brought
> by a bankrupt corporation to augment the bankruptcy estate than they do
> creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res."
> As a consequence, we concluded that fraudulent conveyance actions were "more
> accurately characterized as a private right than a public right as we have used
> those terms in our Article III decisions."
>
> Vickie's counterclaim—like the fraudulent conveyance claim at issue in
> *Granfinanciera*—does not fall within any of the varied formulations of the public
> rights exception in this Court's cases.

*Stern*, 131 S.Ct. at 2614 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 54-56, 109

S.Ct. 2782 (1989)).

Following *Stern* the Sixth Circuit issued its decision in *Waldman v. Stone*, 698 F.3d 910

(6th Cir. 2012). In *Waldman* the Sixth Circuit addressed

> a situation in which a debtor filed an adversary proceeding objecting to the
> secured claims of a creditor on the basis of fraud and in which the debtor sought

affirmative relief in the form of damages. The debtor claimed that the defendant had acquired his debts and assets through the use of fraud. The debtor sought to discharge a judgment of the defendant against the debtor, a judgment lien on the debtor's property and a mortgage on the debtor's residence. The debtor also sought affirmative relief such as specific performance and damages. The bankruptcy court awarded the debtor almost $1.2 million in compensatory damages and $2 million in punitive damages. Both parties had agreed that the debtor's claims were core.

*Hopkins*, 494 B.R. at 312 (citing *Waldman*, 698 F.3d at 914-917).

In *Waldman* the Court explained its understanding of the ruling in *Stern*:

*Stern* thus provides a summary of the law in this area: When a debtor pleads an action under federal bankruptcy law and seeks disallowance of a creditor's proof of claim against the estate—as in *Katchen*—the bankruptcy court's authority is at its constitutional maximum. But when a debtor pleads an action arising only under state-law, as in *Northern Pipeline*; or when the debtor pleads an action that would augment the bankrupt estate, but not "necessarily be resolved in the claims allowance process[,]" then the bankruptcy court is constitutionally prohibited from entering final judgment.

698 F.3d at 919 (citing *Katchen*, 382 U.S. 323; *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982)). As the *Waldman* court noted, "Stone's affirmative claims sought money damages arising from the fraud that Waldman perpetrated on Stone. Like Vickie's counterclaim in *Stern*, those claims arose exclusively under state law and existed without regard to any bankruptcy proceeding." 698 F.3d at 921. The Sixth Circuit further discussed Supreme Court precedents involving fraudulent transfers:

Next came *Granfinanciera, S.A. v. Nordberg*, which held that the public-rights doctrine does not allow a bankruptcy court to decide a fraudulent-conveyance claim filed by a bankrupt estate's trustee against a non-creditor. By means of such a claim, the estate seeks to recover property that the debtor transferred in anticipation of bankruptcy. Fraudulent-conveyance claims, *Granfinanciera* said, "constitute no part of the proceedings in bankruptcy." They are "quintessentially suits at common law that more nearly resemble state-law contract claims . . . to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." Thus, only an Article III court can enter final judgment on such a claim.

698 F.3d at 918-919 (quoting *Granfinanciera*, 492 U.S. 33, 55-56, 109 S.Ct. 2782 (1989)). Like

the counterclaims, the fraudulent transfer claim brought by Frankenberg and the cross-claim

brought by RCR are "*Stern* claims."

### 3.    "*Stern* Claims"

The U.S. Supreme Court has now clarified what the court may do with *Stern* claims.

*Executive Benefits Ins. Agency*, 134 S.Ct. 2165.  In the *Executive Benefits* decision appealed to

the Supreme Court, the Ninth Circuit held that:"[t]aken together, *Granfinanciera* and *Stern* settle

the question of whether bankruptcy courts have the general authority to enter final judgments on

fraudulent conveyance claims asserted against noncreditors to the bankruptcy estate. They do

not." *Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.),* 702 F.3d

553, 565 (9th Cir. 2012). However, the Ninth Circuit also held that "bankruptcy courts have

statutory authority to hear and enter proposed findings of fact and conclusions of law in a

fraudulent conveyance proceeding asserted by a bankruptcy trustee against a noncreditor, subject

to de novo review by a federal district court." *Id.*at 566. The Supreme Court agreed with the

Ninth Circuit's assessment and affirmed its decision. *Executive Benefits Ins. Agency*, 134 S.Ct. at

2174.

The Supreme Court determined that fraudulent transfer claims are indeed "*Stern* claims"

or "proceedings that are defined as 'core' under § 157(b) but may not, as a constitutional matter,

be adjudicated as such (at least in the absence of consent[)]." *Executive Benefits Ins. Agency*, 134

S.Ct. at 2172. The Supreme Court's opinion solves the problem of the "statutory 'gap'" created

by "*Stern* claims". The Court defined the "gap" as follows:

> By definition, a *Stern* claim may not be adjudicated to final judgment by the
> bankruptcy court, as in a typical core proceeding. But the alternative procedure,
> whereby the bankruptcy court submits proposed findings of fact and conclusions
> of law, applies only to non-core claims. See § 157(c)(1). Because § 157(b) does

> not explicitly authorize bankruptcy judges to submit proposed findings of fact and conclusions of law in a *core proceeding*, the argument goes, *Stern* created a "gap" in the bankruptcy statute.

*Id.* at 2172-2173. The Supreme Court closed the perceived "gap" by relying on the severability provision of the relevant Act, noting that the provision states: " 'If any provision of this Act or the application thereof to any person or circumstance is held invalid, the remainder of this Act, or the application of that provision to persons or circumstances other than those as to which it is held invalid, is not affected thereby.' 98 Stat. 344, note following 28 U.S.C. § 151." *Id.* at 2173. By removing the offending "*Stern* claim" from the core categories of the statute, courts can look to the rest of the statute to determine how to treat the claim. The Supreme Court resolved the "*Stern* claim" problems with the following analysis:

> With the "core" category no longer available for the *Stern* claim at issue, we look to § 157(c)(1) to determine whether the claim may be adjudicated as a non-core claim—specifically, whether it is "not a core proceeding" but is "otherwise related to a case under title 11." If the claim satisfies the criteria of § 157(c)(1), the bankruptcy court simply treats the claims as non-core: The bankruptcy court should hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of judgment.

*Id.*

With respect to the actual fraudulent conveyance claims at issue in *Executive Benefits Ins. Agency*, the Supreme Court held that the bankruptcy court could have entered proposed findings of fact and conclusions of law with respect to those claims, subject to *de novo* review by the district court.

> First, the fraudulent conveyance claims in this case are "not . . . core." The Ninth Circuit held—and no party disputes—that Article III does not permit these claims to be treated as "core." . . . Second, the fraudulent conveyance claims are self-evidently "related to a case under title 11." At bottom, a fraudulent conveyance claim asserts that property that should have been part of the bankruptcy estate and therefore available for distribution to creditors pursuant to Title 11 was improperly removed. That sort of claim is "related to a case under title 11" under any plausible construction of the statutory test, and no party contends otherwise.

Accordingly, because these *Stern* claims fit comfortably within the category of
claims governed by § 157(c)(1), the Bankruptcy Court would have been permitted
to follow the procedures required by that provision, *i.e.*, to submit proposed
findings of fact and conclusions of law to the District Court to be reviewed *de
novo*.

*Id.* at 2174 (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, n. 5, 308, 115 S.Ct. 1493, 131

L.Ed.2d 403 (1995)).

Thus, based on the Supreme Court's ruling in *Executive Benefits Ins. Agency*, this court

has authority to issue proposed findings of fact and conclusions of law regarding the

counterclaims at issue and the fraudulent conveyance claims. *Id.* The remaining question is

whether this court should hear the claims and then send proposed findings of fact and

conclusions of law to the district court for de novo review and entry of the final order. Wingfield

argues the court should refuse to hear the case based on either principles of equitable remand or

permissive abstention.

### B.    Equitable Remand

Having determined that it cannot enter a final order on the counterclaims in the Contract

Proceeding or determine the rights of Wingfield in and the Fraudulent Transfer Proceeding, the

court is left with the decision of whether to keep all of the proceedings, remand all of the

proceedings, or sever the claims and retain only those issues that directly involve the estate. The

court has determined to take the third alternative.

A bankruptcy court may remand a claim or cause of action on any equitable ground. 28

U.S.C. § 1452(b). The court may consider a variety of factors.

"Factors to consider in deciding whether to equitably remand a case include: '1)
duplicative and uneconomical use of judicial resources in two forums; 2)
prejudice to the involuntary removed parties; 3) forum non conveniens; 4) the
state's ability to handle a suit involving questions of state law; 5) comity
considerations; 6) lessened possibility of an inconsistent result; and 7) the
expertise of the court in which the matter was originally pending.'"

*In re Lunan*, 489 B.R. 711, 728 n. 9 (Bankr. E.D. Tenn. 2012) (quoting *Parrett v. Bank One,*

*N.A. (In re Nat'l Century Fin. Enters., Inc. Investment Litigation)*, 323 F.Supp.2d 861, 885 (S.D.

Ohio 2004) and *Mann v. Waste Mgt. of Ohio, Inc.*, 253 B.R. 211, 215 (N.D. Ohio 2000)).

 With respect to which course best avoids duplicative and uneconomical use of judicial

resources in two forums, there are several arguments made by Wingfield for the court to

consider. First, Wingfield argues that remand would allow him to proceed to have his matter

heard by a chancellor who has had years of experience with these parties and their claims.

Second, the Chancery Court had the matter set for trial in July of this year. Third, if this court

kept the matter, he could be subjected to two trials to obtain a final resolution should the district

court require additional proof as part of its de novo review. The first two arguments are now

gone. The parties announced at the Remand Hearing that the July trial date was cancelled as a

result of the bankruptcy filing and the chancellor assigned to the case is retiring before the trial is

likely to be reset. Regardless of whether the matter is heard in state or federal court, a judge

unfamiliar with the case will be required to hear it, and no evidence was provided as to whether

the matter could be heard more quickly in one court or the other. Only the third contention

remains, and the court acknowledges that it will be necessary for two federal courts to review the

facts and law before a final order could be entered if the remand is not granted. The need for two

federal courts versus one state court to consider the proceeding leads the court to conclude that

the more efficient use of judicial resources would be to remand the proceeding to state court.

 With respect to the prejudice to the two involuntarily removed parties, only Wingfield is

objecting. Frankenberg, the plaintiff in the two proceedings, has not objected to the removal and

is prepared to move forward in this court. He has filed a claim. As to Wingfield, he has no claim

and he is not consenting. The court finds that there would be some prejudice to him if he is

required to defend the claims against him in this court. There would be additional legal expense

in responding to the proposed findings of fact and conclusions of law if he has an objection to the

findings, and there will be an additional delay as the district court reviews those proposed

findings and conclusions. This court concludes that this factor also favors remand.

As to forum non conveniens, Wingfield is a resident of this district, and his attorneys are

admitted to practice in federal as well as state court. This factor is not a consideration.

RCR argues, without citation to any authority, that prejudice to the Debtor and the estate

caused by returning to the state court should also be considered. The Debtor has very limited

resources to pay expenses at this time and defending the lawsuit in state court while trying to

reorganize puts the success of the reorganization at risk. RCR's primary focus at this time is

selling the lots which remain in its name. Despite its primary focus being selling the property

that is already property of the estate, RCR has started its pursuit of the recovery of the property

transferred to Wingfield by filing the motion to amend to add the cross-claim. Since that

litigation has now been started, the court finds that the Debtor has demonstrated that it is ready to

proceed. That fact coupled with the prejudice of delaying a final order leads this court to the

conclusion that the prejudice to Wingfield supports a remand.

With respect to comity considerations, the court acknowledges that the Chancery Court

has a long history with these proceedings. It had brought them up to the point of trial, and at least

one issue in the case had been fully considered by the appellate courts of this state. Recognition

of the history of this case with that court favors remand. The jurisdictional grant of 28 U.S.C. §

1334(c)(1), which permits abstention in the interest of comity with state courts, and  28 U.S.C. §

1334(c)(2), which mandates abstention in commenced actions capable of timely adjudication in a

state court with appropriate jurisdiction, also support a decision to remand the case to the Chancery Court.

With respect to a concern regarding inconsistent verdicts, this court currently has before it a lawsuit involving other parties who are also claiming an equitable lien on all of the property owned by RCR. That lawsuit alleged that the transfer to Wingfield was a fraudulent transfer, although he was not named as a defendant. Those parties have now filed claims and consented to the jurisdiction of this court to hear and determine their claims against the Debtor RCR. More importantly for the analysis of the remand issue, they have agreed that their claims against Wingfield have been resolved. With those issues apparently resolved, the court does not see that it will be called upon to render a decision on the avoidability of the transfer of the property to Wingfield in that proceeding. If the Contract and Fraudulent Transfer proceedings are remanded, the possibility of an inconsistent verdict on the fraudulent transfer issue has been removed. Further, RCR as debtor in possession has now taken up the issue in the Fraudulent Transfer Proceeding so that if there is a state court ruling that the transfer is avoidable, the benefit has been preserved for all of the creditors of this estate.

The court is concerned that Frankenberg's request for a lien against all of the property belonging to RCR is similar to the request made by the plaintiffs in the other lien case, and that there is a possibility of this court's ruling on the existence of a lien in that case could be inconsistent with a ruling by the Chancery Court on the imposition of a lien in favor of Frankenberg. The court finds that such risk may be eliminated if this court reserves to itself the core matter of determining the extent and priority of any lien that the Chancery Court might award. With that reservation, the matter may be remanded with little or no risk of inconsistent verdicts.

With respect to the state court's ability to handle a suit involving questions of state law, the court finds that a chancellor is certainly able to address the issues of the amount of Frankenberg's claim, the counterclaims of the RCR, and the avoidability of the sale of the three lots to Wingfield. These are state law issues. But these proceedings now include issues of bankruptcy law. For example, a chancellor may not be familiar with the change in the real party in interest caused by a bankruptcy filing. The party who may pursue the fraudulent transfer claims has changed from Frankenberg to RCR as a debtor in possession. The Debtor has assumed the powers of a trustee under 11 U.S.C. § 1107(a) and the ability of a creditor to avoid a fraudulent transfer under 11 U.S.C. § 544(b)(1). These changes in status have changed the exclusively state law nature of the legal questions for the state court to consider. The relief Frankenberg is seeking also affects other creditors. The lots at issue in the Fraudulent Transfer Proceeding are adjacent to the lots involved in other litigation in the bankruptcy case. Frankenberg's Contract Proceeding alleges that he is also entitled to some interest in the lots which remain property of this estate. This intertwining of these proceedings with other proceedings in the bankruptcy case is the only consideration that favors retention of the proceedings.

With respect to the final factor, the Chancery Court certainly has the expertise to address issues of contract, libel of title and fraudulent transfer. Although these are areas of law in which bankruptcy courts frequently delve, they are not uniquely bankruptcy issues. This court does not find this factor to be determinative.

The court must ultimately weigh the value of obtaining a final ruling more quickly with the value of having one court initially review all of the transactions of this Debtor with its creditors.  The prejudice to Wingfield and the need of a final ruling at the earliest possible time

to determine whether this Debtor has four or seven lots to sell tip the scales in favor of remand. A prompt ruling on the fraudulent transfer would allow the property to return to this estate more quickly if Frankenberg and RCR are successful and allow this court to determine the extent and priority of the lien awarded. Having determined that equitable remand is appropriate, there is no need for the court to address the issue of permissive abstention.

### III.    Conclusion

For the foregoing reasons, the motion to remand the Contract Proceeding will be GRANTED in part and DENIED in part. It will be remanded to the Chancery Court of Hamilton County for determination of claims and counterclaims contained therein. To the extent that the Chancery Court awards a judgment and/or equitable lien against any property owned by RCR or Casey, the execution on such judgment remains stayed. Further, the extent and priority of any lien granted will be determined by this court. In addition, the court will GRANT the motion to remand the Fraudulent Transfer Proceeding to the Chancery Court.

A separate order will enter.

# # #